## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MOONBEAM CAPITAL INVESTMENTS LLC,
a Nevada limited liability company, and
STEVEN V. MAKSIN, an individual,

      Plaintiffs,

v

PITTSBURGH COMMUNITY
BROADCASTING CORPORATION, a
Pennsylvania corporation, and
PG PUBLISHING COMPANY d/b/a
PITTSBURGH POST-GAZETTE, a
Pennsylvania corporation,

      Defendants.

Case No.:

### PLAINTIFFS' COMPLAINT

Plaintiffs Moonbeam Capital Investments LLC and Steven V. Maksin for their Complaint against Defendants Pittsburgh Community Broadcasting Corporation and PG Publishing Company d/b/a Pittsburgh Post-Gazette, state as follows:

### Introduction

1.    Plaintiffs Moonbeam Capital Investments LLC and Steven V. Maksin are the victims of multiple false and defamatory statements published by PG Publishing Company, Inc. d/b/a Pittsburgh Post-Gazette and the Pittsburgh Community Broadcasting Corporation designed to damage the reputation and standing of Plaintiffs in the business community. That Defendants recklessly published such statements with malice and the intent to injure or defame Plaintiffs is confirmed by their continued publication and/or republication of such false statements, despite knowing full well that such statements were indeed untrue.

Because these untrue statements – for which no apology or retraction has been issued – falsely impute dishonesty, unethical behavior, illegal conduct and business misconduct to Plaintiffs, and place Mr. Maksin before the public in a false light, Defendants' conduct constitutes Defamation *Per Se,* for which damages are presumed, as well as False Light Invasion of Privacy. And while damages for Defamation *Per Se* are presumed, Defendants' maliciously false publications – all of which remain accessible – have already caused the collapse of three business transactions valued in excess of $325,000 Million and thereby caused Plaintiffs to suffer damages of approximately $65+ Million in related lost fees and profits. Accordingly, the Post-Gazette and the Pittsburgh Community Broadcasting Corporation should be held accountable for continuing to besmirch the reputation and standing of Plaintiffs in the business community and made to pay for the damages they have so maliciously caused Moonbeam and Mr. Maksin to suffer.

## Parties

2.    Plaintiff Moonbeam Capital Investments LLC ("MCI" or "Moonbeam") is a Nevada limited liability company with its registered office in Las Vegas, Nevada.

3.    Plaintiff Steven V. Maksin ("Mr. Maksin") is an individual whose primary residence is in Las Vegas, Nevada.

4.    Defendant Pittsburgh Community Broadcasting Corporation ("PCBC") is a Pennsylvania corporation located in Pittsburgh, Pennsylvania.

5.    Defendant PG Publishing Company. d/b/a Pittsburgh Post-Gazette ("Post-Gazette") is a Pennsylvania corporation located in Pittsburgh, Pennsylvania.

**Jurisdiction and Venue**

6.    This Court has diversity jurisdiction over this action under 28 USC §1332 because this action is between citizens of different states and the amount of damages exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

7.    Venue is proper in the U.S. District Court situated in the division of Pittsburgh, Pennsylvania under L Cv R 3 and 28 USC §1391(b)(2) because certain of the transactions, acts, practices and courses of conduct constituting Defamation *Per Se* and False Light Invasion of Privacy occurred within this District.

**Background Facts**

***MCI, Mr. Maksin and the Mall***

8.    MCI is a private equity fund which provides financing to affiliated companies (collectively the "MCI Group") that invest in the acquisition, ownership, operation, leasing, redevelopment and/or sale of distressed commercial and residential real estate and non-performing loans collateralized by such real estate, among other things. The MCI Group's real estate portfolio includes shopping malls and centers, office parks, and residential buildings and units.

9.    Mr. Maksin is the Manager of MCI. He holds Certified Public Accountant and Real Estate Broker licenses in New York, is admitted to the Bar in New York and New Jersey, is an adjunct professor in the Business Department at the City University in New York and is a member of the Advisory Board of the New York University Stern School of Business Center for Real Estate Finance Research.

10.    On May 13, 2013, the property known as the Century III Mall, located in West Mifflin, Pennsylvania ("Mall"), was purchased by Century III Mall PA LLC ("Century III"), an entity whose sole member was Moonbeam Equities X, LLC.

11.    At the time of purchase, the Mall was a failing business and distressed asset.

12.    On August 2, 2018, the membership interest in Century III was sold by Moonbeam Equities X, LLC to Beacon Commercial Limited ("Beacon") and Bizmax Investments Limited ("Bizmax"), unrelated entities owned by Edward Sklyaroff in which neither MCI nor Mr. Maksin have ever owned any interest.

13.    Accordingly, as of August 2, 2018, neither MCI, Mr. Maksin nor any related parties held any ownership interest in the Mall.

### The Post-Gazette, PCBC and WESA FM

14.    Founded in 1786, the Post-Gazette publishes every day and post-gazette.com is updated around the clock, as news breaks.

15.    The Post-Gazette provides news coverage throughout Pittsburgh, the greater Pittsburgh metro area and the entire country through its online presence.

16.    The combined average of the Post-Gazette's print circulation is over 83,000 with approximately Ten Million monthly average page views on post-gazette.com.

17.    90.5 WESA is National Public Radio News Station located in Pittsburgh, Pennsylvania ("WESA FM") and owned by the Pittsburgh Community Broadcasting Corporation ("PCBC").

18.    WESA FM provides on-line news coverage at wesa.fm.

19.    PCBC claims to serve more than Two Million residents through WESA FM and its related entities.

20.     While the relationship between the Post-Gazette and WESA FM is unknown, as demonstrated *infra*, the parties appear to communicate with each other from time to time and/or collaborate in the gathering of information and reporting of news stories.

### The Code of Ethics for Professional Journalists

21.     The Society of Professional Journalists has issued a Code of Ethics for its members. Exhibit 1.

22.     While it is unknown whether the Post-Gazette and WESA FM are members of the Society of Professional Journalists, the Code of Ethics provides journalistic standards applicable to all journalists. *Id.*

23.     As to the duty to "SEEK TRUTH AND REPORT IT," the Code of Ethics states in pertinent part that journalists should:

- "Take responsibility for the accuracy of their work. Verify information before releasing it. Use original sources whenever possible."

- "Provide context. Take care to not to misrepresent or oversimplify in promoting, previewing or summarizing a story."

- "Gather, update and correct information throughout the life of a news story."

- "Never deliberately distort facts or context, including visual information."

24.     As to the duty to "BE ACCOUNTABLE AND TRANSPARENT," the Code of Ethics states in pertinent part that journalists should:

- "Respond quickly to questions about accuracy, clarity and fairness."

- Acknowledge mistakes and correct them promptly and prominently. Explain corrections and clarifications carefully and clearly."

25.    The Post-Gazette and WESA FM would ignore all these ethical standards in their reporting regarding Plaintiffs.

### WESA FM's March 14, 2024 Article,
### The Post-Gazette's March 18, 2024 Letter and
### PCBC's April 26, 2024 Partial Retraction

26.    On March 14, 2024, WESA FM published an article entitled "Judge sets deadline for Century III Mall renovation progress amid demolition threat" ("March 14, 2024 Article"). Exhibit 2.

27.    In the original publication of the March 14, 2024 Article, WESA FM inaccurately reported that "Allegheny County District Attorney Stephen Zappala filed criminal charges and a restraining order" against MCI "in late January." Id.

28.    In the original publication of the March 14, 2024 Article, WESA FM also incorrectly reported that MCI was the owner of the Century III Mall located in West Mifflin, PA ("Mall"). Id. In fact, MCI had never been the owner of the Mall and no related MCI entity had held any ownership interest in the Mall for almost six years. Indeed, WESA FM indisputably knew at the time of its March 14, 2024 Article that MCI was not the owner of the Mall as evidenced by the fact that WESA FM had previously published a January 30, 2024 Article, "'A monument to blight:' Century III Mall owner facing criminal charges over dilapidated property," correctly identifying the owner of the Mall as "Century III Mall PA, LLC" not MCI ("WESA FM January 30, 2024 Article").

29.    Shortly after WESA FM's publication of its erroneous March 14, 2024 Article, on March 18, 2024, Neena Hagen and Michael Korsh, reporters at the Post-Gazette, sent a letter to Edward Sklyaroff asking a number of questions regarding the condition of the Mall, which letter contained similar false statements of fact, including that:

(a) MCI is a defendant in a criminal case filed by the District Attorney of Allegheny County, Pennsylvania; and

(b) MCI is the owner of the Mall.

("March 18, 2024 Letter"). <u>Exhibit 4</u>.

30.     Again, Mr. Sklyaroff is the Manager and President of Century III and is not an owner, officer or employee of MCI or any MCI Group-related entity.

31.     On April 2, 2024, Senior Deputy Chief Legal Officer for MCI, Jacqueline S. Ackerman, Esq. demanded a written retraction from the Post-Gazette's reporters, Ms. Hagen and Mr. Korsh, of the statements made in the March 18, 2024 Letter for the reasons that:

(a) MCI is not a defendant in any criminal case filed by the District Attorney of Allegheny County, Pennsylvania; and

(b) MCI does not own the Mall.

("First Retraction Demand") <u>Exhibit 5</u>.

32.     The Post-Gazette and its reporters ignored Ms. Ackerman's communication.

33.     On April 24, 2024, having received no response or retraction to MCI's First Retraction Demand for three weeks, Ms. Ackerman sent a second demand for retraction to Ms. Hagen and Mr. Korsh at the Post-Gazette, in which Ms. Ackerman expressly advised that:

"MCI and MLM reserve all rights and remedies with respect to you and your employer's [*i.e.* the Post-Gazette] acts and omissions. They will not hesitate to pursue legal action for damages and other relief should they deem it necessary." *Id.*

<u>Exhibit 6</u> ("Second Retraction Demand").

34.     The Post-Gazette and its reporters again ignored Ms. Ackerman's communication.

35.     Instead, on April 26, 2024, Ms. Ackerman received an undated letter from Cindi Lash, Vice President, News of PCBC, responding to Ms. Ackerman's retraction demand to the Post-Gazette.

36.     Without explaining why PCBC was responding to Ms. Ackerman's retraction demands to the Post-Gazette or how PCBC had come into possession of such correspondence, Ms. Lash acknowledged that "the article you reference did include the error you cite" and indicated that the March 14, 2024 Article had been corrected to reflect the accurate ownership of the Mall as reflected in the Allegheny County records, which information was enclosed ("April 26, 2024 Partial Retraction"). Exhibit 7.

37.     In the April 26, 2024 Partial Retraction, Ms. Lash also advised that a notation to the story had been affixed, "reflecting that it has been corrected, as per our policy" and that "[a] copy of the updated story is included, as requested, the story also may be viewed here:

https://www.wesa.fm/economy-business/2024.-03-14/judge-sets-deadline-for-century-iii-mall-renovation-progress-amid-demolitation-threat.

Id.

38.     With respect to ownership of the Mall, PCBC's April 26, 2024 Partial Retraction stated in pertinent part:

Once the third-largest mall in the world and a retail wonder when it opened in 1979, the Century III Mall was sold during a sheriff's auction in 2013 for $10,500,000 to a company named Century III Mall PA, LLC.
*    *    *    *    *

Corrected: April 10, 2024 at 2:33 EDT
Correction: This story has been updated to accurately reflect the Century III Mall property ownership. The owner was misidentified in an earlier version of the story.

Exhibit 8.

39.    However, neither Ms. Lash's letter nor WESA FM's updated story retracted the false and inflammatory statement that MCI is a defendant in a criminal case filed by the District Attorney of Allegheny County, Pennsylvania.

40.    While it is unknown how PCBC came into possession of the retraction demands made to the Post-Gazette, or why the Post-Gazette failed to heed the admission of WESA FM that MCI did not own the Mall, what is certain is that PCBC and the Post-Gazette would continue to maliciously perpetuate untruths and further defame Plaintiffs despite Defendants' knowledge that such statements were indeed false.

### The Post-Gazette and PCBC Ignore Favorable Press Regarding MCI And Its Successful Redevelopments of Malls

41.    Evidence of the many successes of MCI and/or its related entities in saving other distressed properties was readily available to WESA FM and the Post-Gazette.

42.    For example, on June 3, 2024, EIN Presswire, a world-leading press release distribution platform and newswire service, published an article regarding the redevelopment of the former Burlington Center Mall in Burlington, New Jersey entitled "Repurposing of Burlington Center into Mixed-Use Development Enters Final Phase with Initiation of a 500-unit Component ("Burlington Center Article")." Exhibit 9.

43.    The Burlington Center Article explains that a six-year effort by MCI, Clarion Partners and MRP Industrial had transformed a "dead mall" into a thriving development, supporting more than 2.5 million square feet of warehouse/industrial space, approximately 135,000 square feet of retail space and a 153-room hospitality component in addition to a 500-unit multifamily component to address the critical need for affordable housing options, which is estimated will contribute approximately $5 Million in additional tax revenue to the local Burlington, New Jersey economy. Id.

44.     Only weeks subsequent to the publication of the Burlington Center Article reflecting MCI's positive role in redeveloping the former Burlington Center Mall, the Post-Gazette would publish libelous articles containing false and defamatory statements regarding MCI in conflict with WESA FM's earlier April 26, 2024 Partial Retraction, completely ignoring the evidence of successful investments by the MCI Group and totally disregarding applicable journalistic standards regarding accuracy and verification of information before releasing it for publication, among other ethical principles.

### The Post-Gazette Ignores the First and Second Retraction Demands, As Well As WESA FM's Partial Retraction, and Instead Publishes Two Hit Pieces Again Containing False and Defamatory Statements Regarding Plaintiffs and Placing Mr. Maksin In A False Light

45.     Despite the notice to the Post-Gazette of the falsity of the statements set forth in the First and Second Retraction Demands, as well as WESA FM's Partial Retraction, the Post-Gazette subsequently published two articles containing false and defamatory statements regarding MCI and Mr. Maksin and placing Mr. Maksin in a false light in the public view.

46.     On June 20, 2024, the Post-Gazette published an article entitled "Malls, Money and Moonbeam, A Pittsburgh Post-Gazette Investigation, Moonbeam companies amassed a portfolio of malls across the country, including Century IIII, then left a trail of unpaid taxes and empty, decaying buildings" by Michael Korsh and Neena Hagen, the same Post-Gazette to whom the First and Second Retraction Demands were sent ("Article 1"). Exhibit 10.

47.     Despite notice of the falsity of the statements referenced in the First and Second Retraction Demands, the Post-Gazette published statements in Article 1 which it knew were false, made in reckless disregard of the truth or made negligently by failing to ascertain the truth of the defamatory statements:

(a) "From 2011 to 2014, **Moonbeam Capital** and its subsidiaries purchased 19 malls and shopping centers in more than 10 states."

(b) "A decade later, the business that [**Mr. Maksin**] directs and built into a vast real estate network [*i.e.*, **MCI**] has left a trail of empty, hulking shells across the country ….nowhere was the rot more rampant than at West Mifflin's abandoned [Mall]."

(c) "After the **company** [*i.e.*, **MCI**] failed for years to address the spate of code violations – including severe fire hazards -- the Allegheny County district attorney launched an investigation and then filed criminal charges against the **firm** [*i.e.*, **MCI**] in January for endangering the surrounding community in one of the first cases of its kind in the county."

(d) "[T]he Moonbeam subsidiary that owned the ShoppingTown Mall filed for bankruptcy . . ."

(e) "At Salem Consumer Square in Trotwood, Ohio . . . Moonbeam's subsidiary, Salem Consumer Square OH LLC, filed for bankruptcy in January 2021."

(f) "Land-use experts interviewed by [PPG] say the case of **Moonbeam** and its affiliated companies is a troubling example of what can go wrong when **owners** fail to meet their obligations …"

(g) "Mr. Kelly, the mayor of West Mifflin, said he is perplexed that **Mr. Maksin** was able to buy expensive homes while companies under his control [*i.e.,* **MCI**] failed to pay their taxes or make basic repairs… It's disgraceful."

(h) The investigation launched by the Allegheny County district attorney took place after years of frustration by local leaders over the continued deterioration of the Mall that reached $240,000 in fines for code violations…In addition to examining the **company**'s local activities, the district attorney's office has been scrutinizing **Moonbeam**'s ownership structure."

(i) "[N]either **Mr. Maksin** nor other company officials responded to questions about why the **firm** [*i.e.*, **MCI**] did not pay the taxes and fines at some of its centers."

Exhibit 10 (emphasis added).

48.    The statements in Article 1 regarding ownership/control of the Mall and the target of related criminal proceedings are false and/or were made with actual malice given

the notice of the alleged falsity of the statements that the Post-Gazette had received in the First and Second Retraction Demands, because:

    a)     MCI does not own the Mall;

    b)     Mr. Maksin does not "direct" or control the Mall; and

    c)     MCI is not a defendant in any criminal case filed by the District Attorney of Allegheny County, PA.

49.     Moreover, the statements in Article 1 regarding MCI subsidiaries filing for bankruptcy are false and/or were made with actual malice given that no MCI Group subsidiary or related entity has ever filed for bankruptcy as to the ShoppingTown Mall, Salem Consumer Square or otherwise, which are facts that the Post-Gazette could have easily confirmed simply by reviewing publicly accessible court records.

50.     The Post-Gazette's actual malice is further demonstrated by its deliberate disregard of WESA FM's April 26, 2024 Partial Retraction and its intentional omission of any reference to MCI's sterling success with the Burlington Center Mall, as confirmed in the Burlington Center Article, which directly contradicts the assertion in Article 1 that MCI had "left a trail of empty, hulking shells across the country . . .."

51.     In addition to Article 1's false implication that Mr. Maksin is an unethical owner who pilfered company funds, the Post-Gazette's Article 1 also cast Mr. Maksin in a false light when it published the following statements which imputed dishonesty, unethical behavior, illegal conduct and business misconduct to Mr. Maksin:

(a) "[t]he year after the [Mall] was purchased by the *Moonbeam* subsidiary, bank fraud experts at JP Morgan Chase flagged hundreds of thousands of dollars sent by *Mr. Sklyaroff* to overseas accounts – one in the Czech Republic – according to suspicious activity reports filed with the Financial Crimes Network."

(b) The confidential report, obtained by the Gazette, "shows that between August 2013 and April 2014, **Mr. Sklyaroff** facilitated 19 wire transfers to a financial services company – totaling $1.8 Million – that his bank, JP Morgan Chase, labeled as 'suspicious' and having 'no apparent economic, business or lawful purpose.'"

Exhibit 10.

52.    Contrary to the implication of Article 1, neither Mr. Maksin nor any MCI-related entities orchestrated or were involved in any illegal transfer of monies from the Mall to any foreign accounts, with Mr. Skylaroff or otherwise.

53.    On June 22, 2024, the Post-Gazette doubled down on its defamatory conduct by publishing an editorial entitled "Century III investigation casts light on blight" by its Editorial Board ("Article 2"). Exhibit 11.

54.    Despite being an editorial, Article 2 contains statements of fact that the Post-Gazette knew were false, that were in reckless disregard of the truth or that were made negligently by failing to ascertain the truth of the defamatory statements, and that ignored the notice of falsity of the statements set forth in the First and Second Retraction Demands, as well as WESA FM's April 26, 2024 Partial Retraction:

(a) Tireless investigative work from Post-Gazette reporters Neena Hagen and Michael Korsh "has uncovered the reality behind the blighted Century III Mall: **Owner Steven Maksin** . . . . and his company, **Moonbeam Capital,** has finally embarked on tearing down the Century III eyesore – albeit without shelling out the $150,000 it still owes West Mifflin in unpaid fines. Good riddance."

(b) "**Moonbeam Capital** only began cleaning up after itself after District Attorney Stephen A. Zappala Jr. filed criminal nuisance charges against the **company** this January."

(c) the cleanup will cost **Moonbeam** $2.5 Million more than the $10.5 Million it purchased the property for roughly a decade ago."

(d) "Money for flipping pricey properties worth millions was apparently always readily available – just not for [the Mall], or other community assets around the country **Moonbeam** purchased and allowed to crumble."

(e) "Mr. Zappala's threatened legal action seems to have moved **Moonbeam** to clear the slate on the slag heap."

Exhibit 11 (emphasis added).

55.    Such statements in Article 2 are false and/or were made with actual malice given the notice of the alleged falsity of the statements that the Post-Gazette had received in the First and Second Retraction Demands for the reasons that:

(a)    MCI does not own the Mall; and

(b)    MCI is not a defendant in any criminal case filed by the District Attorney of Allegheny County, PA.

56.    In addition to the false claims of business misconduct by MCI, Article 2 again cast Mr. Maksin in a false light when it published the following statements which imputed dishonesty, unethical behavior, illegal conduct and business misconduct to Mr. Maksin:

(a) "you'd never know the dire circumstances of **Mr. Maksin's** properties based on his lifestyle; two weeks after one of his subsidiary companies filed for bankruptcy in 2021, he purchased a $6 Million . . .oceanfront condo in Sunny Isles Beach, Fla" and "he also owns two luxury residences: one in Trump World Tower in Manhattan worth $9 Million, and another overlooking the Las Vegas strip featuring a 16-car garage."

(b) The Mall "was just one victim or a scheme of greed and hypocrisy, and of **people** whose moral blight migrates to the properties they collect."

(c) "**Mr. Sklyaroff**, a longtime business associate of **Mr. Maksin** . . . made 19 overseas bank transfers in the year following the Century III purchase labeled 'suspicious' by bank fraud experts at JP Morgan Chase," which were flagged as having 'no apparent economic, business or lawful purpose.'"

Exhibit 11 (emphasis added).

57.    Unbeknownst to Plaintiffs at the time of publication of Articles 1 and 2, the Post-Gazette had previously published similar false and defamatory statements regarding

MCI on January 30, 2024, in an article entitled "Allegheny County DA files criminal nuisance charges against Center III Mall owner Moonbeam Capital" ("Article 3"), which included the false allegations that: (a) the Mall's owner was MCI; and (b) the Allegheny County District Attorney filed criminal nuisance charges against MCI. <u>Exhibit 12</u>.

58.    In summary, the Post-Gazette knew that many statements of fact contained in Articles 1, 2 & 3 were false, it made such statements in reckless disregard of the truth or negligently by failing to ascertain the truth of the defamatory statements before making them as evidenced in part by the First and Second Demands for Retraction sent to Post-Gazette, and WESA FM's April 26, 2024 Partial Retraction, all of which provided the Post-Gazette with notice of the falsity of such statements. <u>Exhibits 5, 6, 7, 10, 11</u>.

59.    There is absolutely no factual basis for such false and scandalous allegations portraying Mr. Maksin as an unethical businessman funding his lifestyle by associating with dishonest business associates assisting the laundering of money from American assets and transferring such funds to exotic foreign locations in contravention of U.S. law. Instead, Mr. Maksin is a patron of the arts and charities, an ethical businessman and the embodiment of the American Dream, with all his success earned through his ingenuity, tireless dedication and hard work alone.

60.    As a proximate result of the illegal actions of PCBC and the Post-Gazette, Plaintiffs have suffered damages, including, but not limited to, damage to reputation, decreased standing in the community and the deterrence of third persons from associating or dealing with Plaintiffs.

61.    As a proximate cause of the illegal actions of PCBC and the Post-Gazette, MCI has also suffered actual damages of approximately $65 Million, relative to the collapse

of two business transactions in Utah and one business deal in Nevada with a combined valued in excess of $325 Million, in which the afore-referenced defamatory statements regarding alleged criminal action and bankruptcies involving MCI were expressly presented as the reason why the prospective business partner could not proceed with the transactions.

### COUNT I – DEFAMATION *PER SE*
### (MCI v PCBC)

62.    Plaintiffs incorporate by reference the prior paragraphs of their Complaint.

63.    In the March 14, 2024 Article, PCBC published the following false and defamatory facts regarding MCI:

(a)    Allegheny County District Attorney Stephen Zappala filed criminal charges and a restraining order" against MCI "in late January;" and

(b)    MCI was the owner of the Mall.

Exhibit 2. In fact, MCI was never the owner of the Mall, no related MCI entity was the owner of the Mall as of the date of the March 14, 2024 Article and MCI has never been charged with any criminal offense.

64.    The recipients of the March 14, 2024 Article understood them to be defamatory as applied to MCI.

65.    The recipients of the March 14, 2024 Article understood them as intended to be applicable to MCI.

66.    The statements in the March 14, 2024 Article were published by PCBC knowing that certain of the statements were false, it made them in reckless disregard of the truth or negligently by failing to ascertain the truth of the defamatory statements before making them.

67.    As such, PCBC willfully, maliciously, outrageously and/or negligently published the statements in the March 14, 2024 Article with the intention to injure and defame MCI.

68.    The false and defamatory facts contained in the March 14, 2024 Article impute dishonesty, unethical behavior, illegal conduct and business misconduct to MCI, which injured MCI in its business, constituting defamation *per se* for which damages are presumed.

69.    While PCBC updated the WESA FM story to accurately reflect the ownership of the Mall, a fact which it could have easily discovered before its publication of the March 14, 2024 Article and was already known to PCBC as evidenced by its publication of the correct Mall ownership in the WESA FM January 30, 2024 Article (Exhibit 3), WESA FM never retracted the false statement in its March 14, 2024 Article that "MCI is a defendant in a criminal case filed by the District Attorney of Allegheny County, Pennsylvania," the falsity of which statement WESA FM was alerted to by Ms. Ackerman's April 2024 First and Second Retraction Demands and which WESA FM could have also easily discovered was false before its publication by a simple review of publicly accessible criminal court records.

70.    As a direct and proximate result of PCBC's illegal acts constituting defamation *per se*, MCI has suffered damages, including, but not limited to, damage to reputation, decreased standing in the community and the deterrence of third persons from associating or dealing with them.

71.    As a direct and proximate result of PCBC's illegal acts constituting defamation *per se*, MCI has also suffered actual damages in excess of $65 Million relative to the collapse of three business deals valued in excess of $325 Million.

72.    The fair report privilege does not apply to the statements in the March 14, 2024 Article because they were not fair, accurate and complete and, therefore, not substantially accurate.

73.    The fair report privilege does not apply to the statements in the March 14, 2024 Article because they were published solely for the purpose of causing harm to MCI.

74.    As such, PCBC had no privilege to make the statements in the March 14, 2024 Article and/or abused, waived or forfeited any conditional privilege.

**WHEREFORE**, MCI requests that the Court enter Judgment in its favor and against PCBC as follows:

A.    Order PCBC to prepare and issue a written apology and full and complete retraction, which MCI may circulate to any third parties;

B.    Award MCI in excess of Seventy-Five Thousand Dollars ($75,000.00) along with costs, fees and interest and such other relief as this Court may deem appropriate; and

C.    Award MCI punitive damages against PCBC.

### COUNT II – DEFAMATION *PER SE*
### (MCI & Mr. Maksin v Post-Gazette)

75.    Plaintiffs incorporate by reference the prior paragraphs of their Complaint.

76.    In Articles 1 and 2, the Post-Gazette published the following false and defamatory facts regarding Plaintiffs:

(a)    MCI owns the Mall;

(b)    Mr. Maksin "directs" or controls the Mall;

(c)    MCI is a defendant in any criminal case filed by the District Attorney of Allegheny County, PA; and

(d)    MCI Group subsidiaries filed for bankruptcy as to the ShoppingTown

Mall in New York and Salem Consumer Square in Ohio.

Exhibits 10, 11.

77.    In Article 3, the Post-Gazette also published the following false and defamatory

facts regarding MCI:

(a)    MCI owns the Mall; and

(b)    the Allegheny County District Attorney filed criminal nuisance charges against

MCI.

Exhibit 12.

78.    The recipients of Articles 1, 2 & 3 understood them to be defamatory as applied

to Plaintiffs.

79.    The recipients of Articles 1, 2 & 3 understood them as intended to be

applicable to Plaintiffs.

80.    The statements in Articles 1, 2 & 3 were published by the Post-Gazette

knowing that certain of the statements were false, made in reckless disregard of the truth or

negligently by failing to ascertain the truth of the defamatory statements before making them

as evidenced in part by the First and Second Demands for Retraction sent to the Post-

Gazette, as well as WESA FM's April 26, 2024 Partial Retraction, all of which provided the

Post-Gazette with notice of the falsity of such statements.

81.    The falsity of such statements could have also been easily discovered by the

Post-Gazette before its publication of Articles 1, 2 & 3 by a simple review of publicly

accessible property records and court records, and the falsity of certain statements had

already been made clear by Ms. Ackerman's April 2024 First and Second Retraction

Demands on behalf of MCI by the time of Articles 1 and 2, and that the Post-Gazette published such defamatory statement anyway is further evidence of the Post-Gazette's actual malice.

82.    The Post-Gazette willfully, maliciously, outrageously, recklessly and/or negligently published such false statements with the intention to injure and defame Plaintiffs.

83.    The false and defamatory facts contained in Articles 1, 2 & 3 impute dishonesty, unethical behavior, illegal conduct and business misconduct to Plaintiffs which injured Plaintiffs in their business, constituting defamation *per se* for which damages are presumed.

84.    The false and defamatory facts contained in the Articles 1, 2 & 3, including that MCI owned the Mall, that MCI was a defendant in a criminal case filed by the District Attorney of Allegheny County, PA in addition to its intentional omission of any reference to MCI's sterling success with the Burlington Center Mall, which contradicted that MCI "left a trail of empty, hulking shells across the country," were made with actual malice, as demonstrated by the notice of the falsity of the statements that the Post-Gazette had received in the First and Second Retraction Demands and disregarded.

85.    As a direct and proximate result of the Post-Gazette's illegal acts constituting defamation *per se*, Plaintiffs have suffered damages, including, but not limited to, damage to reputation, decreased standing in the community and the deterrence of third persons from associating or dealing with them.

86.    As a direct and proximate result of the Post-Gazette's illegal acts constituting defamation *per se*, MCI has also suffered actual damages in excess of $65 Million relative to the collapse of three business deals valued in excess of $325 Million.

87.    The fair report privilege does not apply to the statements in Articles 1 and 2 to the extent that they do not concern an official action or proceeding.

88.    The fair report privilege does not apply to the statements in Articles 1, 2 & 3 because they were not fair, accurate and complete and, therefore, not substantially accurate.

89.    The fair report privilege does not apply to the statements in Articles 1, 2 & 3 because they were published solely for the purpose of causing harm to Plaintiffs.

90.    As such, the Post-Gazette had no privilege to make the statements in Articles 1, 2 and 3 and/or abused, waived or forfeited any conditional privilege.

**WHEREFORE**, Plaintiffs request that the Court enter Judgment in their favor and against the Post-Gazette as follows:

A.    Order the Post-Gazette to prepare and issue a written apology and full and complete retraction, which Plaintiffs may circulate to any third parties;

B.    Award Plaintiffs damages in excess of Seventy-Five Thousand Dollars ($75,000.00) along with costs, fees and interest and such other relief as this Court may deem appropriate; and

C.    Award Plaintiffs punitive damages against the Post-Gazette.

### COUNT III - FALSE LIGHT INVASION OF PRIVACY
### (Mr. Maksin v. Post-Gazette)

91.    Plaintiffs incorporate by reference the prior paragraphs of their Complaint.

92.    In printing false statements or selectively printing true statements in a manner which created a false impression, the Post-Gazette gave publicity to matters in Articles 1 and 2 that has placed Mr. Maksin before the public in a false light, including specifically the portrayal that he is an unethical businessman funding his lifestyle by associating with dishonest business associates assisting in the laundering of money from American assets

and transferring such funds to exotic foreign locations in contravention of U.S. law. <u>Exhibits</u> <u>10, 11</u>.

93.    The false light under which Mr. Maksin has been placed would be highly offensive to a reasonable person and was, in fact, offensive to Mr. Maksin, because the Post-Gazette imputed dishonesty, unethical behavior, illegal conduct and business misconduct to him.

94.    The statements printed by the Post-Gazette are not of legitimate concern to the public.

95.    The Post-Gazette had knowledge of and/or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Maksin was placed as evidenced in part by the First and Second Demands for Retraction sent to the Post-Gazette's reporters which put the Post-Gazette on notice of the alleged falsity of the statements.

96.    As a direct and proximate result of the Post-Gazette's illegal acts which exposed him to public view, Mr. Maksin has suffered damages, including, but not limited to, damage to his reputation, mental anguish, decreased standing in the community and the deterrence of third persons from associating or dealing with him.

97.    The Post-Gazette acted willfully, maliciously, outrageously and/or in reckless disregard of Mr. Maksin's rights, thereby subjecting the Post-Gazette to liability for punitive damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE**, Mr. Maksin requests that the Court enter Judgment in his favor and against the Post-Gazette as follows:

A.    Order the Post-Gazette to prepare and issue a written apology and full and complete retraction, which Mr. Maksin may circulate to any third parties;

B.    Award Mr. Maksin damages in excess of Seventy-Five Thousand Dollars ($75,000.00) along with costs, fees and interest and such other relief as this Court may deem appropriate; and

C.    Award Mr. Maksin punitive damages against the Post-Gazette.

Respectfully submitted,

ANDERSON & LABOVITZ, LLC

By: _____
     William J. Labovitz, Esq.
     Pa. I.D. No. 77018

429 Fourth Avenue, Suite 602
Pittsburgh, PA 15219
Tel: (412) -209-3200
Fax: (412) 291-1001
wlabovitz@PaLawFirm.com

Counsel for Plaintiffs, Moonbeam Capital
Investments LLC and Steven V. Maksin

Dated: December 16, 2024