IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOONBEAM CAPITAL INVESTMENTS LLC, a Nevada limited liability company, and STEVEN V. MAKSIN, an individual,<br><br>*Plaintiffs,*<br><br>v.<br><br>PITTSBURGH COMMUNITY BROADCASTING CORPORATION, a Pennsylvania corporation, and PG PUBLISHING COMPANY d/b/a PITTSBURGH POST-GAZETTE, a Pennsylvania corporation, NEENA HAGEN, an individual, MICHAEL KORSH, an individual, and PITTSBURGH UNION PROGRESS, a Pennsylvania nonprofit corporation,<br><br>*Defendants.* | Case No: 2:24-cv-01700-CCW<br><br>Hon. Christy Criswell Wiegand |

**DEFENDANT PITTSBURGH COMMUNITY BROADCASTING CORPORATION'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)**

AND NOW, comes Defendant Pittsburgh Community Broadcasting Corporation, by and through its undersigned counsel, and submits this Brief in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Rule 12(B).

**I.      INTRODUCTION**

Plaintiffs' claims against the PCBC fail as a matter of law and must be dismissed at this juncture.

***First***, the statements included in the WESA Article were substantially true, which is an absolute defense to Plaintiffs' claim for Defamation Per Se.

***Second***, the PCBC is protected from any defamation claim due to the fair report privilege, as both statements identified in the WESA Article were based upon reporting the details of a public government proceeding or ongoing government matters that concerned matters of public importance.

***Third***, upon being informed of the error within the WESA Article by the Senior Deputy Chief Legal Officer for MCI, the PCBC issued a correction, which rendered the second iteration of the WESA Article both entirely true and subject to the fair report privilege it 1) correctly identified the ownership interest of the Century III Mall and 2) correctly identified that a company with a Las Vegas address was the subject of criminal charges.

Accordingly, Plaintiffs' claim for Defamation Per Se against the PCBC – to the extent it survives dismissal – can only be based upon the first iteration of the WESA Article, one that appeared online for less than a month.

For these reasons, set forth in detail below and in the accompanying Motion to Dismiss, Plaintiffs' claim against the PCBC within their Second Amended Complaint must be dismissed with prejudice.

## II.     FACTUAL ALLEGATIONS

Defendant PCBC incorporates the factual background set forth within its Motion to Dismiss as if set forth at length herein.

## III.    STANDARD OF REVIEW

In order to withstand a Rule 12(b)(6) motion to dismiss, Plaintiffs' Second Amended Complaint must set forth facts showing that a claim is plausible. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). A complaint's conclusory or bare bones allegations cannot survive a motion to dismiss, and the complaint must contain "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 678). As explained by Fowler, district courts should first separate the factual and legal elements of a claim. Fowler, 578 F.3d at 210-211. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Id. The Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id.

To demonstrate a plausible claim for relief, Plaintiffs are obligated to provide more than conclusory assertions, and the included allegations must be sufficient to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965-65 (2007). A simple recitation of the elements of a cause of action will not do. Id. In its evaluation, the Court need not credit "bold assertions" or "legal conclusions" in a Complaint when deciding a Motion to Dismiss. Burlington Coat Factory SEC Litigation, 114 F.3d 1410, 1429-30 (3d Cir. 1997). Further, unsupported conclusions, argumentative modifiers, and unwarranted inferences need not be accepted as true. Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 159 (3d Cir. 2017).

"In reviewing a Rule 12(b)(6) motion, it is well-established that a court should consider only the allegations of the complaint, matters of public record, and documents that form the basis of the claim." Welch v. Bank of America, 2014 U.S. Dist. LEXIS 17214 (W.D. Pa. 2014), quoting M & M Stone Co. v. Pennsylvania, 388 Fed. App'x 156, 160-161 (3d Cir. 2010); see also McBride v. Warden of Alleg. Cnty. Jail, 577 Fed. App'x 98, 99 (3d Cir. 2014).

IV. **ARGUMENT**

    A. **The Statements Included in the WESA Article Were Substantially True, Which is An Absolute Defense to Plaintiffs' Claim for Defamation Per Se.**

Even at the Motion to Dismiss stage, the admissions contained within Plaintiffs' Second Amended Complaint, MCI's prior binding judicial admissions, and the sheer volume of news

3

coverage that demonstrates the public discourse that MCI had ownership interest over the Century III Mall must result in a dismissal as the WESA Article's statements were substantially true.

Truth is an absolute defense in Pennsylvania to claims of defamation per se and defamation. See Pacitti v. Durr, 310 F. App'x 526, 528 (3d Cir. 2009) (citing Bobb v. Kraybill, 511 A.2d 1379, 1380 (Pa. Super. Ct. 1986)).

In asserting the defense of truth, a defendant need only show the substantial truth of the statement rather than the complete truth. Id. "[P]roof of substantial truth must go to the 'gist' or 'sting' of the alleged defamatory matter; the test is whether the alleged libel as published would have a different effect on the mind of the reader from which the pleaded truth would have produced." Emekekwue v. Offor, 26 F. Supp. 3d 348, 362 (M.D. Pa. 2014).

Rephrased for the context of Plaintiffs' claims, the test is whether the alleged libel as published (i.e. that MCI owned the Century III Mall and that the Allegheny County District Attorney was bringing criminal charges against MCI) would have a different effect on the mind of the reader than the pleaded truth would have (i.e. that Century III Mall PA, LLC owned the Century III Mall and that the Allegheny County District Attorney was bringing criminal charges against Century III Mall PA, LLC).

Minor inaccuracies do not amount to falsity so long as "the substance, the gist, the sting, of the libelous charge be justified." Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517 (1991). The "gist" of a statement is true if the effect upon a reader is the same regardless of the inaccuracy. Id.

Turning to the present action, Plaintiffs contend that the WESA Article contained two defamatory statements:

    a. "Once the third-largest mall in the world and a retail wonder when it opened in 1979, the Century III Mall was sold to Moonbeam Capital Investments in 2013."

    b. "Allegheny County District Attorney Stephen Zappala filed criminal charges and a restraining order against the Las Vegas-based company in late January."

  Based upon MCI and Century III Mall PA LLC's prior judicial admissions, it is immediately clear that both these statements are true. As truth defeats any claim for defamation, including defamation per se, Plaintiffs' claims fail and dismissal is warranted.

  In 2022, Plaintiff MCI made multiple judicial admissions in a verified Answer and New Matter in Allegheny County in which it admitted that it was an owner and operator of the Century III Mall in 2022. The January 30, 2024 Criminal Complaint included as Exhibit 3 to the Second Amended Complaint that initiated proceedings against Century III Mall PA LLC includes an address for Century III Mall PA LLC's based in Las Vegas, Nevada. Additionally, Century III Mall PA LLC participated in its own bankruptcy proceeding as the debtor with an identified address located in Las Vegas, and sought court authorize to obtain post-petition debt with a filing that self-identified a Las Vegas, Nevada address. Therefore, both statements made in the WESA Article can therefore be considered wholly true at this juncture by looking at the face of the Second Amended Complaint, its included exhibits, and facts that this Court can take judicial notice of. Dismissal is warranted.

  Furthermore, even if MCI points to an error in the exact identification of the corporate form holding ownership of Century III Mall, the statements are substantially true within the meaning of Pennsylvania law. This technical inaccuracy does not alter the gist of the statements, i.e. that MCI had ultimate ownership control of Century III Mall and criminal charges were being pursued against a Las Vegas-based ownership interest. Plaintiffs admit in their Second Amended

Complaint that MCI Group held an ownership interest prior to August 2, 2018 and further admit that MCI is an entity that provides financing to affiliated companies. That technically the Century III Mall was sold to an LLC whose sole member was an MCI affiliated company does not contradict the "substance" or "gist" of the idea that MCI had ownership control over the development of the Century III Mall in 2013.

Additionally the fact that the Criminal Complaint explicitly provides an address for Century III Mall PA, LLC as being located on the same street as MCI in Las Vegas, Nevada supports a finding that it was substantially true that the District Attorneys was pursuing criminal charges against a Las Vegas-based company.

Furthermore, , this Court must take judicial notice of the sheer number and existence of news reports and media coverage in the public realm from 2013 to 2024 – **prior to the WESA Article** – that identified that MCI was the purchaser and owner of the Century III Mall. It was commonly reported within the public realm in the geographic area that MCI was the owner of the Century III Mall and was having issues with the local authorities. Providing the specific technical accuracies that Plaintiffs highlight in their Second Amended Complaint would not have changed the existence of the public reporting of this understanding.

As discussed, test for whether a defamatory statement is substantially true is whether the alleged libel as published would have a different effect on the mind of the reader from which the pleaded truth would have produced." Emekekwue v. Offor, 26 F. Supp. 3d 348, 362 (M.D. Pa. 2014). It was commonly reported within the public realm in the geographic area that MCI was the owner of the Century III Mall and was having issues with the local authorities. Providing the specific technical accuracies that Plaintiffs highlight in their Second Amended Complaint would not have changed the existence of the public reporting of this understanding.

The alleged libel could not have had a different effect on the mind of the reader and therefore is substantially true within the meaning of Pennsylvania law.

As the statements within the WESA Article were substantially true within the meaning of Pennsylvania law, dismissal is required.

### B. The PCBC is Protected From Any Defamation Claim As to The First Iteration of The WESA Article Due to the Fair Report Privilege.

Even if the WESA Article contained inaccuracies, the PCBC is entitled to protection from Plaintiffs' claim for Defamation Per Se as the WESA Article was a news article being published by a news media organization that was reporting on the official actions of executive and administrative officials in a matter concerning public affairs. As this cannot be contradicted by any fact that discovery would reveal, dismissal with prejudice is required at this point due to an application of the fair report privilege.

Pennsylvania law recognizes the fair report privilege. Mosley v. Observer Pub. Co., 427 Pa. Super. 471, 476 (Pa. Super. 1993). This privilege is based upon the theory that it is in the public interest that information be made available as to what takes place in public affairs, and therefore a newspaper has the privilege to report the acts of the executive or administrative officials of government. Sciandra v. Lynett, 187 A.2d 586, 588 (Pa. 1963). This privilege is a qualified one, and can be lost if abused. Mosley, 427 Pa. Super. at 476.

> ***If the newspaper account is fair, accurate and complete***, and not published solely for the purposes of causing harm to the person defamed, ***it is privileged and no responsibility attaches, even though information contained therein is false or inaccurate***. Further, it is not essential that the governmental proceedings or, as in this case, the official report, be set forth verbatim by the newspaper. ***A summary of substantial accuracy is all that is required***.

Sciandra, 187 A.2d at 588-89 (emphases added).  The fair report privilege immunizes a news reporter from a defamation claim even if the information is inaccurate or false, so long as the news report was an accurate and fair report of a matter of public affair. Id.

The Third Circuit has identified that the question of whether the privilege has been forfeited is similar to the substantial truth test, i.e. that a reasonable person, comparing the statement, actions, or reported conduct of the government would not find that the substance, gist, or sting of the government's conduct had been enhanced.  Mosley, at 479-80 (internal citations omitted).

In applying the fair report privilege, the Third Circuit has ruled that Pennsylvania would adopt the Restatement (Second) of Torts § 611 in Medico v. Time, Inc., 643 F.2d 134 (3d Cir. 1981).  The Restatement (Second) of Torts § 611 recognizes that the fair report privilege extends to any action taken by any officer of any State or subdivision.  Mosley, at 472; Restatement (Second) of Torts § 611, Cmt. D.  These actions have been held to include statements to the press made by district attorneys and government officials.  See Hudak v. Times, Pub. Co., 534 F.Supp. 546, 572 (W.D. Pa. 2008) (On the record comments made by District Attorney were the same as if made in an official press conference and therefore subject to the fair report privilege).  Actions subject to the fair report privilege also extend to the contents of complaints, filed in civil or criminal actions.  Weber v. Lancaster Newspapers, Inc., 878 A.2d 63, 72 (Pa. 2005) (the fair report privilege extends to court pleadings, such as a complaint).

The fair report privilege therefore protects the protects the press from liability for the publication of the defamatory material so long as the account of the official action is fair, accurate, and complete.  Sciandra v. Lynett, 187 A.2d 586, 588 (Pa. 1963).  The qualified immunity is forfeited if the publisher publishes the report solely for the purposes of causing harm to the person

8

defamed or abuses the 'occasion' by exaggerated additions or embellishments to the account. Sciandra, 187 A.2d at 600.

Here, this Court need only evaluate what was stated in the publicly-available press conference from January 30, 2024 and what was included in the related Criminal Complaint to immediately determine that the WESA Article did not embellish or increase the sting or gist of the statements of the government officials, District Attorney Zappala and West Mifflin Mayor, Chris Kelly.

District Attorney Zappala stated that criminal charges were being brought against the owners of Century III Mall. Zappala then described the complexity of the ownership structure of the Century III Mall, stating that the money flows through multiple different entities all of which have different attorneys. He indicated that the multiple levels of affiliated ownership structure of the Century III Mall shared the same address in Las Vegas, Nevada.

Following his remarks, West Mifflin Mayor Chris Kelly affirmatively stated that it was "Moonbeam" that had misled and lied to West Mifflin. The Criminal Complaint identifies that the address listed for Century III Mall PA, LLC is in Las Vegas, Nevada and includes reports of testimony from Mr. Pryor, who is identified on MCI's website as the President and COO. If anything, the WESA Article ***underplayed*** the "sting" or "gist" of the truth by omitting Mayor Kelly's indictment of Moonbeam, and not reporting that MCI's own president gave testimony that was referenced in the Criminal Complaint.

The WESA Article is explicit in identifying the subject of its reporting at issue in this case: the January 30, 2024 press conference and related information contained with the Criminal Complaint. This reporting concerned the actions of executive or administrative officials of a government in a matter concerning the public. The reporting does not need to be a verbatim

transcription of what was stated, although any such transcription would have included an explicit mention of Moonbeam.  As the January 30, 2024 press conference and the Criminal Complaint are matters of public record that will not change, there can be nothing that will be introduced into the record that will change the clear application of the fair reporting privilege.

Plaintiffs conclude, with no accompanying factual allegation, that the WESA Article was published solely to harm MCI.  This assertion is not enough to survive this motion to dismiss, as the complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 678).  Mere conclusions are not sufficient.  Id.

As a review of the January 30, 2024 press conference and the Criminal Complaint attached to the Second Amended Complaint demonstrate, the WESA Article was a report of the contents of both.  The fair report privilege attaches and no facts from a discovery record will change this.  Dismissal of Plaintiffs' claim for Defamation Per Se is required.

C. **The Second Iteration of the WESA Article is Undeniably True or Subject to the Fair Report Privilege and Therefore No Claim for Defamation Per Se Can Survive if Based Upon the Second Iteration.**

Plaintiffs' admission that the PCBC corrected the WESA Article on April 10, 2024 must result in the dismissal of any claim for Defamation Per Se predicated on the statements within the Second Iteration of the WESA Article as they are either subject to the fair report privilege or are demonstrably true by facts available to this Court at this juncture.

Plaintiffs admit that the April 10, 2024 correction was as follows:

> Once the third-largest mall in the world and a retail wonder when it opened in 1979, the Century III Mall was sold during a sheriff's auction in 2013 for $10,500,000 to a company named Century III Mall PA, LLC.
>
> * * * *
>
> Corrected:  April 10, 2024 at 2:33 EDT
>
> *Correction*:  *This story has been updated to accurately reflect the Century III Mall property ownership.  The owner was misidentified in an earlier version of the story.*

(See 2nd Am. Compl. ¶ 46; 2nd Am. Compl. Exhibit 11).  Plaintiffs therefore admit that the correction was made as to the technical inaccuracy in the ownership interest identification, and the only remaining statement in the Second Iteration of the WESA Article that could possibly be defamatory is that criminal charges were filed "against the Las Vegas company."

Plaintiffs attempt to claim that the Defamation Per Se claim against the PCBC remains because "the April 10, 2024 Correction still contained the false and defamatory statement that 'Allegheny District Attorney Stephen Zappala filed criminal charges and a restraining order ***against the Las Vegas company*** in late January (emphasis added)." (2nd Am. Compl. ¶ 48). Plaintiffs claim that this could only be read as applying to MCI because Century III Mall PA, LLC is a Pennsylvania limited liability company.

This position has an obvious fatal flaw.  The statement "against the Las Vegas company" does not purport to be a statement as to the legal citizenship of Century III Mall PA, LLC and therefore the fact that the company may be a Pennsylvania limited liability company is irrelevant. As discussed previously, the Criminal Complaint included within the Second Amended Complaint provides a Las Vegas address for Century III Mall PA, LLC and Century III Mall PA, LLC has

11

participated in litigation and made filings in its own bankruptcy proceeding that indicate that it has a Las Vegas address.

The Second Iteration of the WESA Article's statement that criminal charges and a restraining order were filed "against the Las Vegas company" are incapable of being the basis for a defamation per se claim for two distinct reasons. First, they are accurate for the reasons stated above. The Second Iteration of the WESA Article contains two true statements, and truth is an absolute defense against defamation. Alternatively, the inaccuracy in the Second Iteration stems from the Criminal Complaint and the January 30, 2024 Press Conference, which – as mentioned above – is subject to the fair report privilege. Under either option, the PCBC is immune from any claim for Defamation Per Se following the April 10, 2024 correction.

***This is crucial,*** as Plaintiffs are clear that their claim for Defamation Per Se arises from both the original WESA Article and the corrected version. As no defamation can be identified in the Second Iteratio following April 10, 2024, MCI's claim for Defamation Per Se, to the extent it survives dismissal, must be limited to the time between the first publication of the WESA Article and the time the factually accurate Second Iteration was published. Dismissal for any claim predicated on the Second Iteration of the WESA Article following April 10, 2024 is required.

V. **CONCLUSION**

Plaintiffs have failed to set forth any cause of action that can survive Defendant Pittsburgh Community Broadcasting Corporation's Motion to Dismiss. It is therefore respectfully requested that Plaintiffs' claims against this Defendant are dismissed with prejudice.

        Respectfully submitted,

        **MARSHALL DENNEHEY**

BY:   */S// GREGORY P. GRAHAM*
       _____

       GREGORY P. GRAHAM, ESQUIRE
       PA ID #317205
       gpgraham@mdwcg.com
       SCOTT R. EBERLE, ESQUIRE
       PA ID# 89044
       sreberle@mdwcg.com
       Union Trust Building, 501 Grant Street, Suite 700
       Pittsburgh, PA 15219
       (412) 803-2442

       ***Attorneys for Defendant, Pittsburgh Community Broadcasting Corporation***

## CERTIFICATE OF SERVICE

Counsel for all parties of record were served copies of this filing via the ECF system.

        Respectfully submitted,

        **MARSHALL DENNEHEY**

BY:     */S// GREGORY P. GRAHAM*
        _____

        GREGORY P. GRAHAM, ESQUIRE
        PA ID #317205
        gpgraham@mdwcg.com
        SCOTT R. EBERLE, ESQUIRE
        PA ID# 89044
        sreberle@mdwcg.com
        Union Trust Building, 501 Grant Street, Suite 700
        Pittsburgh, PA 15219
        (412) 803-2442

        ***Attorneys for Defendant, Pittsburgh Community Broadcasting Corporation***