IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOONBEAM CAPITAL INVESTMENTS LLC, STEVEN V. MAKSIN, <br><br> Plaintiffs, <br><br> v. <br><br> PITTSBURGH COMMUNITY BROADCASTING CORPORATION, PG PUBLISHING COMPANY, NEENA HAGEN, MICHAEL KORSH, PITTSBURGH UNION PROGRESS, <br><br> Defendants. | 2:24-CV-01700-CCW |

**OPINION**

Before the Court is Defendant Pittsburgh Community Broadcasting Corporation's ("PCBC") Motion to Dismiss Plaintiffs' Second Amended Complaint, ECF No. 53. ECF No 61. For the reasons set forth below, the Court will grant the Motion in part and deny the Motion in part.

**I.   Background**

In this case, Plaintiffs Moonbeam Capital Investments ("Moonbeam") and Steven Maskin assert claims for defamation and invasion of privacy against Defendants: the Pittsburgh Community Broadcasting Corporation; the PG Publishing Company, d/b/a the *Pittsburgh Post-Gazette*; Neena Hagen; Michael Korsh; and Pittsburgh Union Progress. ECF No. 53. Plaintiffs' claims relate to statements published by Defendants—news publications and journalists—regarding Moonbeam's relationship to the Century III Mall in West Mifflin, Pennsylvania. *Id.* ¶ 1. The allegations, taken as true, are as follows.

Moonbeam is an equity fund which invests in distressed real estate properties. *Id.* ¶ 11. Mr. Maskin is the manager of Moonbeam. In 2013, Moonbeam formed an LLC of which it was the sole member—Century III Mall PA LLC—and, through that LLC, purchased the Century III Mall in West Mifflin. *Id.* ¶ 13. In August 2018, Moonbeam sold its membership interest in Century III Mall PA LLC to Beacon Commercial Limited and Bizmax Investments Limited, entities which are unrelated to Moonbeam. *Id.* ¶ 15. Thus, as of August 2018, neither Moonbeam nor Mr. Maskin held any ownership interest in the Century III Mall. *Id.* ¶ 16.

On January 30, 2024, the Allegheny County District Attorney's Office filed a criminal complaint against Century III Mall PA LLC, listing a Las Vegas, Nevada address for the LLC in the complaint. ECF No. 53-3 at 1. The criminal complaint alleges that Century III Mall PA LLC recklessly disregarded "numerous documented health and safety hazards" at the Century III Mall and cited the LLC for causing or risking catastrophe and for making a public nuisance. *Id*. at 2. Subsequently, WESA FM, the public radio station owned and operated by PCBC, reported on the criminal complaint in an article published on March 14, 2024 titled "Judge sets deadline for Century III Mall renovation progress amid demolition threat[.]" *See* ECF No. 53-2. The relevant portion of the article stated as follows:

> Once the third-largest mall in the world and a retail wonder when it opened in 1979, the Century III Mall was sold to Moonbeam Capital Investments in 2013. The company had plans to revitalize it, but in 2019, the borough determined the building to be unsafe and uninhabitable. Allegheny County District Attorney Stephen Zappala filed criminal charges and a restraining order against the Las Vegas company in late January.[1]

---

[1] Moonbeam asserts that the "Las Vegas company" must be read as referring to Moonbeam, "as the only Nevada company referenced" in the first version of the WESA article. ECF No. 65 at 2. PCBC does not appear to dispute that reading of the article. *See generally* ECF Nos. 62, 66.

ECF No. 53-2. On April 5, 2024, Moonbeam demanded a written retraction from PCBC stating that: (1) Moonbeam "does not and has never owned the mall;" and (2) that "[t]he District Attorney of Allegheny County, Pennsylvania has not filed any criminal charges and a restraining order against" Moonbeam. ECF No. 53 ¶ 39; *id*. On April 26, 2024, Moonbeam received correspondence from PCBC informing Moonbeam that the WESA article had been updated as of April 10, 2024. ECF No. 53 ¶ 43–44. The relevant portion of the article was updated as follows:

> Once the third-largest mall in the world and a retail wonder when it opened in 1979, the Century III Mall was sold during a sheriff's auction in 2013 for $10,500,000 to a company named Century III Mall Pa. LLC. The company had plans to revitalize it, but in 2019, the borough determined the building to be unsafe and uninhabitable. Allegheny County District Attorney Stephen Zappala filed criminal charges and a restraining order against the Las Vegas company in late January.

ECF 53-11. The updated WESA article also included a "[c]orrection" noting that the owner of the mall "was misidentified in an earlier version of the story." *Id.* at 2. However, Moonbeam argues the updated WESA article still published the defamatory statement that criminal charges were filed against Moonbeam, because the statement that charges were filed "against the Las Vegas Company . . . could only reasonably be understood to pertain to [Moonbeam], a Nevada limited liability company, and not Century III, a Pennsylvania limited liability company." ECF No. 53 at 48.

On December 16, 2024, Moonbeam and Steven Maskin filed this case against PCBC and other Pittsburgh area news outlets and journalists that reported on Moonbeam's relationship to the Century III Mall.[2] ECF No. 1. Plaintiffs filed a First Amended Complaint and then, with the consent of Defendants, the operative Second Amended Complaint (the "SAC"). ECF Nos. 19, 53. PCBC now moves to dismiss Moonbeam's defamation *per se* claim in Count I, which is the only

---

[2] This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C § 1331, as the parties are diverse and the amount in controversy exceeds $75,000.

3

claim against PCBC.  ECF No. 61.  The Motion is fully briefed and ripe for resolution.  ECF Nos. 62, 65, 66.  For the reasons set forth below, the Court will deny the Motion with respect to Moonbeam's defamation *per se* claim against PCBC regarding the statement published in the first version of the WESA article, published on March 14, 2024, that criminal charges were filed against Moonbeam.  The Court will grant the motion with respect to the statements in the corrected version of the article, updated on April 10, 2024, because those statements were true, and therefore, no defamation claim can proceed based on the corrected version of the article.

**II.      Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level[,]" *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations

> that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss."). "To prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense . . . a defendant must show that 'the defense is apparent on the face of the complaint and documents relied on in the complaint.'" *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quoting *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015)).

**III.    Legal Analysis**

PCBC argues it is entitled to dismissal for two reasons. First, PCBC asserts that the statements Moonbeam complains of were either entirely or substantially true, an affirmative defense to a defamation claim. ECF No. 62 at 3–4. Second, PCBC argues the fair report privilege, another affirmative defense, immunizes any untrue statement it published. *Id.* at 7. Moonbeam responds that the truth of the statements in the WESA article and PCBC's entitlement to assert the fair report privilege are factual inquiries inappropriate for resolution on a 12(b) motion. ECF No. 65 at 2, 17–18. The Court will first consider PCBC's argument that the relevant statements were substantially true and then consider its argument regarding the fair report privilege.

### A. PCBC Cannot, At This Stage, Show That the Statements in the WESA Article Were Substantially True

In its Motion, PCBC contends that the allegations in the SAC, Moonbeam's prior judicial admissions, and the "sheer number" of news reports identifying Moonbeam as the owner of the Century III Mall demonstrate that the statements it published in the WESA article were substantially, if not entirely, true. ECF No. 62 at 3–7. PCBC points to an answer Moonbeam filed in a 2022 lawsuit it defended in the Allegheny County Court of Common Pleas. *Id.* at 5. In the answer, Moonbeam admitted that it "owned, operated and/or provided management services for [the] Century III Mall." ECF Nos. 61-1 at ¶ 5 (alleging that Moonbeam and related entities are Nevada corporations which "owned, operated and/or provided management services for Century III Mall), 61-2 at ¶ 5 (denying that Moonbeam entities are corporations but admitting remainder of the allegations in ¶ 5). Moonbeam argues that PCBC cannot rely on certain materials extrinsic to the SAC to support its Motion and that its arguments regarding the accuracy of the statements in the WESA article are premature. ECF No. 65 at 7, 13–14.

The parties agree that Pennsylvania law applies to Moonbeam's defamation *per se* claim against PCBC. *See Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999) (holding when parties agree, either explicitly or implicitly, on the relevant law to apply, the district court in a diversity action shall apply that law). Under Pennsylvania law, the substantial truth of a statement is an absolute and complete defense to a defamation claim based on that statement. *Bobb v. Kraybill*, 511 A.2d 1379, 1380 (Pa. Super. 1986). The test for the substantial truth of a statement "is whether the [alleged] libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Emekekwue v. Offor*, 26 F. Supp. 3d 348, 362 (M.D. Pa. 2014) (quoting *Dunlap v. Philadelphia Newspapers, Inc.*, 448 A.2d

6

6, 15 (Pa. 1982)). Further, "minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge [is] justified.'" *Id.* at 362 (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)).

Moonbeam complains about two statements in the WESA article: (1) the statement that "the Century III Mall was sold to Moonbeam Capital Investments in 2013"; and (2) the statement that "Allegheny County District Attorney Stephen Zappala filed criminal charges and a restraining order against the Las Vegas company in January." ECF No. 53. As an initial matter, the Court agrees with PCBC that the allegations in the SAC show that the first statement was substantially, if not entirely, true. In the SAC, Moonbeam alleges that "[o]n May 13, 2013, the . . . Century III Mall . . . was purchased by Century III Mall PA LLC ("Century III"), an entity whose sole member was Moonbeam Equities X, LLC." *Id.* ¶ 13. A statement that Moonbeam purchased the mall through an LLC, of which it was the sole member, would not have produced a different effect on the mind of the reader from the effect produced by the statement that Moonbeam purchased the mall. Either statement conveys that ultimate ownership of the mall rested with Moonbeam. Accordingly, PCBC has shown that the statement that the Century III Mall was sold to Moonbeam in 2013 was wholly or substantially true, and thus no viable defamation claim can arise from that statement.

But PCBC cannot, at this stage, show the truth of its statement that criminal charges were filed against Moonbeam. Moonbeam alleges that it sold its ownership interest in Century III Mall PA LLC in 2018 and held no ownership interest in the Century III Mall at the time criminal charges were filed against its owners in January 2024. ECF No. 53 at ¶¶ 15–16. PCBC argues that Moonbeam's 2022 admission that it "owned, operated and/*or* provided management services for [the] Century III Mall" establishes that it continued to hold an ownership interest in the mall after

7

2018. Assuming *arguendo* that the Court can consider the 2022 judicial filing, the filing does not, construing the facts in the light most favorable to Moonbeam, establish that Moonbeam continued to have an ownership interest in the mall after 2018. The plain meaning of the allegation Moonbeam admitted to is that Moonbeam either owned *or managed* the mall. Moonbeam did not definitively admit that it owned the mall and, even if it had, such an admission would not establish that criminal charges were filed against Moonbeam in relation to the mall over one year later in 2024. Accordingly, the 2022 judicial filing fails to establish the whole or substantial truth of the allegedly defamatory statement.

The Court is also unpersuaded by PCBC's argument that the large volume of other news reports identifying Moonbeam as the owner of the mall shows that "[p]roviding the specific technical accuracies that Plaintiffs highlight . . . would not have changed" the public perception that Moonbeam owned the mall at the time criminal charges were filed against its owners. ECF No. 62 at 6. Even if the existence of such news reports was subject to judicial notice, PCBC's reliance on them misconstrues the test for substantial truth. To show that a statement was entirely or substantially true, PCBC must show that the statement would have produced the same effect in the mind of the reader as the pleaded truth. In other words, PCBC must show that its statement that criminal charges were filed against Moonbeam would have produced the same effect in the mind of the reader as a statement that criminal charges were filed against an LLC in which Moonbeam previously, but no longer, held an ownership interest. Simply showing that Moonbeam was widely believed to own the mall at the time the WESA article was published is insufficient.

PCBC has thus failed to show that the WESA article's statement that criminal charges were filed against Moonbeam in January 2024 was wholly or substantially true.

### B. PCBC Cannot, At This Stage, Show That It Is Immunized by the Fair Report Privilege

PCBC argues that any inaccuracy in the WESA article is immunized by the Fair Report Privilege. ECF No. 62 at 7. The fair report privilege is an affirmative defense which immunizes the publication of "defamatory material if the published material reports on an official action or proceeding." *DeMary v. Latrobe Printing & Pub. Co.*, 762 A.2d 758, 762 (Pa. 2000). Thus, even a news report that includes false information will be immune from defamation liability if the report "is [a] fair, accurate and complete" account of the official action or proceeding it reports on and "is not published solely for the purpose of causing harm to the person defamed." *DeMary*, 762 A.2d at 762. However, the fair report privilege "is forfeited if the publisher steps out of the scope of the privilege or abuses the occasion." *Id.* (internal citation and quotation marks omitted). "This can be done by exaggerated additions, or embellishments to the account." *Id.* Normally, the question of whether the fair report privilege was abused is a "factual determination . . . to be made by the jury." *Id.* at 763.

The WESA article reported on an official action or proceeding—the civil and criminal proceedings brought in Allegheny County against the owners of the Century III Mall. *See* ECF No. 53-2. But PCBC points to nothing in the record of either proceeding which stated that Moonbeam owned the Century III Mall or that criminal charges were filed against Moonbeam. PCBC relies on a January 30, 2024 press conference in which the criminal charges against the owners of the Century III Mall were announced, and during which Allegheny County District Attorney Stephen Zappala "described the complexity of the ownership structure of the Century III Mall," and West Mifflin Mayor Chris Kelly "stated that it was 'Moonbeam' that had misled and lied to West Mifflin." ECF No. 62 at 9. Therefore, PCBC argues, its statement that criminal

9

charges were filed against Moonbeam is protected by the fair report privilege, because the officials behind the criminal charges made public statements tying Moonbeam to the Century III Mall.

The problem with PCBC's argument is that the WESA article, which was originally published on March 14, 2024, makes no mention of the January 30, 2024 press conference. *See* ECF No. 53-2. The WESA article reports on the civil demolition proceedings, the criminal complaint filed by the Allegheny County District Attorney, and various trespassing incidents documented at the mall. *Id*. Thus, the fair report privilege might immunize a statement in the WESA article that was also contained in the criminal complaint, because the article reported on the complaint. But the WESA article did not report on the January 30, 2024 press conference. Accordingly, PCBC fails to show, at this stage, that the fair report privilege immunizes the statements it published in the WESA article. PCBC's argument that the fair report privilege entitles it to dismissal thus fails.

    **C.**    **The Court Will Limit Moonbeam 's Defamation Claim Against PCBC to the First Iteration of the WESA Article**

Lastly, PCBC asks that, to the extent Moonbeam's defamation claim against it survives dismissal, it be limited to the first iteration of the WESA article. ECF No. 62 at 10. As discussed, the first iteration of the article contained the statement that "the Century III Mall was sold to Moonbeam Capital Investments in 2013" followed by the statement, just two sentences later, that "Allegheny County District Attorney Stephen Zappala filed criminal charges and a restraining order against the Las Vegas company in late January." ECF No. 53-2. As alleged in the SAC, the WESA article was updated on April 10, 2024. ECF No. 53 ¶ 46. The updated version stated that "the Century III Mall was sold during a sheriff's auction in 2013 for $10,500,000 to a company named Century III Mall Pa. LLC" followed by the same statement contained in the original version

10

of the article that "Allegheny County District Attorney Stephen Zappala filed criminal charges and a restraining order against the Las Vegas company in late January."  ECF Nos. 53-11, 53-2.

PCBC contends both statements were "[u]ndeniably [t]rue."  ECF No. 62 at 10.  In response, Moonbeam states that its defamation claim against PCBC "is based solely upon the statements in the March 14, 2024 Article" but nevertheless complains that "the April 10, 2024 [c]orrection completely fails to address the false statement that the Las Vegas company, i.e., [Moonbeam], was the subject of a criminal prosecution[.]"  ECF No. 65 at 19–20.  Moonbeam thus appears to concede that the defamation claim against PCBC can proceed only based on the first iteration of the WESA article.  In any case, the Court agrees that taking the allegations in the SAC as true and construing them in the light most favorable to Moonbeam, the relevant statements in the corrected version of the WESA article were true.  The defamation claim against PCBC contained at Count I will therefore be limited to the statement in the first iteration of the WESA article, published on March 14, 2024, that criminal charges were filed against Moonbeam.  And the cutoff date for the claim will be April 10, 2024, when the correction to the WESA article was published.

IV.   Conclusion

For the foregoing reasons, the Court will grant PCBC's Motion to Dismiss, ECF No. 61, in part.  The Court will deny the Motion with respect to  Moonbeam's defamation *per se* claim against PCBC regarding the statement published in the first version of the WESA article, published on March 14, 2024, that criminal charges were filed against Moonbeam.  The Court will grant the motion with respect to the statements in the corrected version of the article, updated on April 10, 2024.

DATED this 11th day of December, 2025.

BY THE COURT:

<u>/s/ Christy Criswell Wiegand</u>
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record